**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| MORTON ANTHONY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 4:07-cv-00060-WMA-JEO |
| | ) | |
| JOHN MATA, FIELD OFFICE DIRECTOR, | ) | |
| DHS/ICE, ATLANTA DISTRICT OFFICE; | ) | |
| ALBERTO GONZALES, ATTORNEY | ) | |
| GENERAL; MICHAEL CHERTOFF, | ) | |
| SEC'Y DEPT. OF HOMELAND | ) | |
| SECURITY; SCOTT HASSELL, | ) | |
| CHIEF OF CORRECTIONS, ETOWAH | ) | |
| COUNTY JAIL, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Petitioner Morton Anthony has filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in which he is challenging his detention pending removal to Guyana. (Petition).[1]  The respondents were required to show cause why the requested relief should not be granted.  Upon consideration of the matter, the court finds that the petition is due to be denied without prejudice.

## BACKGROUND

The petitioner is a native of and citizen of Guyana.  He entered the United States illegally on or about May 1986.  On August 31, 1987, he was convicted for the criminal sale of a controlled substance.  (Pamela Jean Reeves Declaration (hereinafter "Reeves Dec.") at ¶ 4).[2]  On December 16, 1992, he was convicted on two counts of kidnapping in the Charleston County

---

[1]The petition is located at document 1.

[2]Reeves' declaration is attached as an exhibit to document 5.

Court of the General Session, Charleston, South Carolina.  (Reeves Dec. at ¶ 4).  On October 14,

1994, an Immigration Judge ordered that the petitioner be deported to Guyana.  (Reeves Dec. at ¶

6).  On October 24, 1994, the petitioner filed an appeal with the Board of Immigration Appeals

("BIA"), which was dismissed on January 23, 1995.

After serving his time for his convictions, the petitioner was turned over to the custody of

Immigration and Customs Enforcement ("ICE") on April 28, 2006.  (Reeves Dec. at ¶ 8).  ICE

requested travel documents for the petitioner on June 14, 2006, and March 19, 2007.  (Reeves

Dec. at ¶¶ 9 & 13).  On July 28, 2006, a 90-day Post Order Custody Review ("POCR") was done

and the petitioner's continued detention was ordered.  (Reeves Dec. at ¶ 10).  On October 5,

2006, ICE sent the 180-day POCR to the office of Detention and Removal in Washington, D.C.,

which decided to continue his detention on November 10, 2006.  (Reeves Dec. at ¶ 11).  In its

notification to the petitioner of his continued detention, ICE noted that:

> A request for a travel document was submitted to the Consulate of Guyana and the
> process to verify your identity is ongoing.  Your failure to provide any proof of
> your identity and nationality has impeded the issuance of your travel document.
> The government of Guyana regularly issues documents to effect the repatriation of
> its nationals.  There is no indication at this time that a certificate will not be issued
> for your repatriation once your nationality is confirmed.

(Doc. 1 at Attachment A).  As of the date of the respondents' answer, no travel documents had

been received.  (Reeves Dec. at ¶ 15).

The petitioner filed the present petition on January 8, 2007.  He alleges that:

> because his removal period expired in 1995, the ICE has no statutory authority to
> detain him. . . .[and] alternative[ly] that because he has been detained past the six
> months foud [sic] 'presumptively unreasonable' by the Supreme Court in

**Zadvydas**[3] while the ICE has been unable to obtain travel documents for his removal, his removal to Guyana is not reasonably foreseeable, the court should thus order his release under appropriate supervisory conditions.

(Petition at p. 8).

The respondents counter that the petitioner has named three improper respondents and thus his petition is due to be dismissed as to those respondents.  (Response at pp. 3-5).[4] Additionally, they assert that the petitioner is a deportable alien and is properly being detained pending his deportation.  *Id*. at 5-14.

The petitioner's custody situation was reviewed by Deportation Officer Pamela Jean Reeves and she determined that given the petitioner's three felony convictions, including the sale of a controlled substance and two kidnappings, the petitioner's behavior makes him a danger to the community and a flight risk.  (Response at p. 3).  He currently remains in custody within this District.

**DISCUSSION**

**The Custody Issue**

The Supreme Court held that in cases challenging physical custody, "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *See Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause, shall be directed to the person having custody of the person detained."); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is

---

[3]The petitioner is referring to the case of *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), which the court will address more fully herein.

[4]The response is located at document 5.

alleged to be unlawful custody."); *Macias v. Greene*, 28 F. Supp. 2d 635, 637 (D. Colo. 1998) (holding "[t]he proper respondent to a habeas action is the habeas petitioner's custodian"). More specifically, for "physical confinement" habeas actions, the proper respondents are the wardens of the facilities where the habeas petitioners are being held. *Rumsfeld*, 542 U.S. at 435. This is logical because the writ acts against the person who has "day-to-day control over [the] prisoner." *Brittingham v. United States*, 982 F.2d 378, 378 (9th Cir. 1992); *see also Ex Parte Endo*, 323 U.S. 283, 306 (1944) (writ is directed to prisoner's "jailer"); *Guerra v. Meese*, 786 F.2d 414, 416 (D.C. Cir. 1986) (Parole Commission is not a custodian despite its power to release the petitioner).

The Field Office Director of DHS/ICE, the Attorney General for the United States of America, and the Secretary for the Department of Homeland Security are not the proper respondents in a habeas petition. The United States Court of Appeals for the Tenth Circuit Court of Appeals held that the warden of a detention facility – the person actually holding the petitioner in physical custody – is the proper respondent for a habeas action, not the Attorney General. *Blango v. Thornburgh*, 942 F.2d 1487, 1491-92 (10th Cir. 1991). "Otherwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because [he] ultimately controls the [INS] district directors and [the] prisons." *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994); *see also Vasquez v. Reno*, 233 F.3d 688, 693, 696 (1st Cir. 2000). The petitioner has named three incorrect respondents, therefore, his petition is due to be dismissed against them. However, because that does not entirely resolve the present matter, the court will further consider the respondents' next arguments.

4

**The Merits**

The respondents also assert that as a deportable alien, the petitioner is not entitled to release pending deportation in view of its requests to the Embassy of Guyana for the necessary travel documents. (Response at 6). The petitioner retorts that his release is not likely in the reasonably foreseeable future. (Reply).[5]

Under 8 U.S.C. § 1231(a)(2), after entry of a final removal order, deportable aliens must be held in custody for a period of 90 days while removal arrangements are made final with the accepting country. Under §1231(a)(6) when removal arrangements cannot be finalized within the 90-day period, an alien ordered removed who is: (1) "inadmissible," or (2) "removable" for violating status requirements, entry conditions, or the criminal law, or for reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community or unlikely to comply with the removal order, "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision." 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), the United States Supreme Court addressed the issue of continued detention following the issuance of a final order of deportation. In that matter, two cases were consolidated. Petitioner Zadvydas was born in Lithuania to German parents, but later immigrated to the United States. He had a long criminal record including drug offenses, attempted robbery, attempted burglary, and theft. *Zadvydas* at 684. He was ordered deported but neither Lithuania nor Germany would admit him because he was not a Lithuanian or German citizen. *Id*. In 1995, after being held in custody for nearly a year while awaiting deportation, Zadvydas sought habeas review pursuant to 28 U.S.C. §

---

[5]The petitioner's reply is located at document 7.

2241.  The court ordered Zadvydas released, determining that the Government would never effectuate his deportation, thereby rendering his detention both permanent and unconstitutional. *Id*. at 2491-92.  The Fifth Circuit Court of Appeals reversed the lower court's decision finding no constitutional violation as long as deportation remained a possibility, the Government continued its good faith efforts to achieve removal, and Zadvydas' detention was subject to periodic administrative review.  *Id*.

Petitioner Kim Ho Ma in that case was a permanent resident alien with Cambodian citizenship.  He was convicted of manslaughter for a gang-related shooting.  Ma could not be deported because there was no deportation treaty between the United States and Cambodia. After being detained beyond the 90-day period provided for in § 1231(a)(2), Ma also filed a petition for habeas review.  The lower court held that his continued detention was unconstitutional unless the respondent could show a "realistic chance" that he ultimately would be deported.  It further found that because Cambodia would not accept Ma without an effective deportation treaty in place, the respondent could not make the requisite showing.  The Ninth Circuit Court of Appeals affirmed the lower court, finding that the statute "did not authorize detention for more than a reasonable time beyond the 90-day period authorized for removal."  *Id*. at 2491-92.

The United States Supreme Court stated, "The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply

6

with the order of removal.'"  *Zadvydas*, 533 U.S. at 688.  The Court also stated that in

determining the propriety of continued detention

> the habeas court must ask whether the detention in question exceeds a period
> reasonably necessary to secure removal.  It should measure reasonableness
> primarily in terms of the statute's basic purpose, namely, assuring the alien's
> presence at the moment of removal.  Thus, if removal is not reasonably
> foreseeable, the court should hold continued detention unreasonable and no longer
> authorized by statute.  In that case, of course, the alien's release may and should
> be conditioned on any of the various forms of supervised release that are
> appropriate in the circumstances, and the alien may no doubt be returned to
> custody upon a violation of those conditions. . . .  And if removal is reasonably
> foreseeable, the habeas court should consider the risk of the alien's committing
> further crimes as a factor potentially justifying confinement within that reasonable
> removal period. . . .

*Id*. at 699-700.  The Court also recognized that six months is a "presumptively reasonable period

of detention."  *Id*. at 701.  The Court went on to state as follows:

> After this 6-month period, once the alien provides good reason to believe that
> there is no significant likelihood of removal in the reasonably foreseeable future,
> the Government must respond with evidence sufficient to rebut that showing.
> And for detention to remain reasonable, as the period of prior postremoval
> confinement grows, what counts as the "reasonably foreseeable future" conversely
> would have to shrink.  This 6-month presumption, of course, does not mean that
> every alien not removed must be released after six months.  To the contrary, an
> alien may be held in confinement until it has been determined that there is no
> significant likelihood of removal in the reasonably foreseeable future.

*Id*. at 701.

The respondents argue that as an inadmissable alien or criminal alien, the petitioner does

not fall within the protections of *Zadvydas* and may be indefinitely detained pending deportation

to his homeland as the state of the law currently exists within the Eleventh Circuit.  *Jean v.

Nelson*, 727 F.2d 957 (11th Cir. 1984) (en banc); *Shaughnessy v. United States ex rel Mezei*, 345

U.S. 206 (1953).  The court disagrees in that the "aliens" in *Jean* and *Shaughnessy* were either

"excludable" or "unadmitted" aliens.  In contrast, the petitioner has been in the United States for

some twenty-one years.  Accordingly, the court finds *Zadvydas* applicable.[6]

Next, the respondents argue that the petitioner properly is being held under §

1231(a)(6).  In support of this contention, they assert that the Department of Homeland Security

("DHS") requested on June 14, 2006, and March 19, 2007, from the Embassy of Guyana, the

travel documents necessary to deport the Petitioner and on October 10, 2006, and March 20,

2007, the same documents were sent to the Travel Document Unit ("TCU") for assistance.

Thus, the respondents note that the United States is diligently pursuing the removal of the

petitioner and the DHS has continued to follow all regluatory requirements.  They conclude that

these facts coupled with the fact that the petitioner is a definite flight risk as well as a danger to

the community makes the decision to detain him reasonable.

As quoted above, the Supreme Court in *Zadvydas* did not require that every alien who has

been in detention for more than six months be released.  As long as removal is reasonably

foreseeable, the alien's potential dangerousness or risk of his committing further crimes may be

considered in determining whether to retain custody.  *Zadvydas*, 533 U.S. at 699-700; *see also* 8

C.F.R. § 241.4 (2004).  In *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002), the court stated

that "in order to state a claim under *Zadvydas* the alien not only must show post-removal order

detention in excess of six months but also must provide evidence of a good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future."

The respondents assert that the petitioner cannot argue that his continued detention

---

[6]In *Clark v. Martinez*, 543 U.S. 371,125 S. Ct. 716, 160 L. Ed. 2d 734 (2005), the Supreme Court extended the application of *Zadvydas* to inadmissible aliens.  The Court stated that after the six month period, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Id*. at 377-78 (citing *Zadvydas*, 533 U.S. at 701).

violates *Zadvydas* or that he has met his burden of proof under *Akinwale*.  Specifically, they

assert that

> the Department's efforts to remove the Petitioner are ongoing.  The Petitioner's
> actions speak for themselves, i.e. the Petitioner's criminal record and the fact that
> he entered this country illegally.  Specifically, his criminal conduct, including but
> not limited to two kidnappings, and his conviction for the sale of controlled
> substances.  It is clear that the Petitioner does not respect this countries [sic]
> immigration laws, as he entered this country illegally.  It is clear that the Petitioner
> was not willing to adhere to the laws of this country, as evidenced by his criminal
> activity.  Finally, it is clear that if he was released then he would be a definite
> flight risk and a danger to the community.

(Response at 14).  The petitioner retorts that he has met his burden of proof under *Zadvydas*.

Specifically, he states that he has shown that removal in the foreseeable future is unlikely and the

respondent has not shown that he is not "specially dangerous" to the community.  (Response at

2-5).

The court finds that the petitioner has not demonstrated that there is no significant

likelihood of removal in the reasonably foreseeable future.  Even though the Consulate of

Guyana has not yet issued travel documents, it is reasonable to believe that the documents will be

issued once the petitioner's nationality is confirmed as set out by the DHS.  At a minimum, it

cannot be said at this juncture that there is no significant likelihood of removal in the reasonably

foreseeable future.

### CONCLUSION

Premised on the foregoing, the present petition is due to be denied and dismissed without

prejudice to the petitioner's right to file another petition when he is able to state a claim for relief

under *Zadvydas*.

**DONE**, this the 20th day of June, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE